IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRANDI R. TUCKER,                    :
                                     :
    Plaintiff,                       :
                                     :
vs.                                  :     CIVIL ACTION 12-0250-M
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of Social Security,     :
                                     :
    Defendant.                       :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19).  Oral argument was waived in this action (Doc. 20).  Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or

1

substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was twenty-three years old, had completed a high school education (Tr. 149), and had previous work experience as a secretary and waitress (Tr. 37). In claiming benefits, Plaintiff alleges disability due to status post gastric bypass, dysthymic disorder, borderline personality disorder, herpes simplex virus, substance abuse and dependence, and polycystic ovary syndrome (Doc. 12 Fact Sheet).

The Plaintiff filed applications for disability insurance and SSI on June 23, 2008 (Tr. 122-31; *see also* Tr. 13). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not

2

return to her past relevant work, there were specific jobs that Tucker could perform (Tr. 13-22).  Plaintiff requested review of the hearing decision (Tr. 7-8) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Tucker alleges that:  (1) The ALJ did not properly consider the opinions and conclusions of his treating physician; and (2) the ALJ improperly determined that a particular impairment was non-severe (Doc. 12).  Defendant has responded to—and denies—these claims (Doc. 15).

Before reviewing the evidence, the Court notes that the two claims raised by Tucker rely on the same evidence for their support.  As the transcript in this action exceeds twelve hundred pages, the Court will only summarize that evidence which directly pertains to the claims raised herein.

On March 17, 2008, Dr. Stephen Varner, with the University of South Alabama Department of Obstetrics and Gynecology, examined Plaintiff for chronic pelvic pain and abnormal uterine bleeding with a past history of polycystic ovary syndrome; he noted at that time that she was in no distress though her abdomen was soft, and mildly tender bilaterally (Tr. 606-07).

3

The doctor noted no cervical lesions or motion tenderness on the pelvic exam; though Plaintiff was mildly tender in the adnexa, BUS was within normal limits.  Varner noted that a CT scan and ultrasound did not show any pathology.  The doctor performed an open diagnostic laparoscopy, a hysteroscopy with endometrial biopsy, and a dilation and curettage; he noted pelvic congestion, a normal uterine cavity, and removed a GI staple with no complications (Tr. 604-05; *see also* Tr. 846-73).  Tucker tolerated the procedure well.

On May 9, 2008, Plaintiff complained of pelvic pain and continued bleeding for which she was told to take Motrin[1] (Tr. 601).  In the notes from the June 30, 2008 examination, the doctor noted complaints of bleeding and pain; Varner found tenderness and prescribed Darvocet[2] (Tr. 600).  Two weeks later, Tucker complained of continued pain, worse after eating (Tr. 599); on July 30, the doctor prescribed Prilosec[3] (Tr. 598).

On February 3, 2009, Plaintiff was seen at the Mobile County Health Department as a follow-up visit for diarrhea; it

---

[1] A prescription was written as well, but the Court cannot read the doctor's writing (Tr. 601).

[2] Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation.  *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

[3] *Prilosec* is used in the short-term treatment of duodenal ulcers.

was noted that she was in no acute distress (Tr. 818-19). Tucker stated that she did not have a headache, chest pain or discomfort, abdominal pain, or localized joint pain; on examination, her abdomen was normal.

On February 8, 2009, Dr. Varner saw Plaintiff for pelvic pain for which he prescribed Elavil[4] and Lortab[5] (Tr. 1139).

On March 9, 2009, Dr. Varner completed a Clinical Assessment of Pain in which he indicated that he had been treating Plaintiff since May 2008[6] for pelvic congestive syndrome and chronic pelvic pain (Tr. 835-36).  The doctor indicated that Tucker's pain would distract her from adequately performing daily activities or work and that physical activity would greatly increase her pain, causing her to be distracted from what she was doing if not cause her to abandon the activity.  It was Varner's opinion that Plaintiff's pain, or the side effects from medications which he had prescribed, would be severe and limit her effectiveness because of distraction, inattention, or drowsiness.  The doctor further indicated that Tucker would

---

*Physician's Desk Reference* 1516-19 (48th ed. 1994).

[4] *Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression.  *Physician's Desk Reference* 3163 (52nd ed. 1998).

[5] *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[6] As noted earlier, records show that Varner actually first saw

5

likely have to undergo a hysterectomy with bilateral salpingo-oophorectomy within the following year.

On April 26, 2009, Plaintiff underwent an abdominal and pelvic CT performed with IV contrast (Tr. 1143-45).  Though there was evidence of prior gastric surgery, there was no evidence of pancreatitis or focal pancreatic abnormality.  The spleen, kidneys, and adrenal glands appeared to be normal; there was no evidence for ureteral stone or obstruction.  There was no evidence of bowel obstruction and no acute inflammatory process identified.  The pelvis looked normal; there was no clear abnormality of the bladder.  The bladder was unremarkable; bony structures were normal.  There did appear to be some thickening and, perhaps, some enhancing hyperemia or inflammation in the labia of the external vagina in the lower pelvis.

On April 27, 2009, Plaintiff was admitted to USA Hospital for an uncontrolled herpes simplex virus outbreak for which she was given Valtrex, morphine for pain, and Zoloft[7] for depression (Tr. 874-901; *see also* Tr. 1142-43).  During the course of her hospitalization, Tucker was treated with Dilaudid,[8] OxyContin,[9]

---

Plaintiff on March 17, 2008 (Tr. 604-07).
  [7]*Zoloft* is "indicated for the treatment of depression." *Physician's Desk Reference* 2229-34 (52nd ed. 1998).
  [8]*Dilaudid* is used for the management of pain.  *Physician's Desk Reference* 419-22 (62nd ed. 2008).

6

and Tylox.[10]  Tucker was discharged five days later in stable condition with her pain well controlled.

On April 29, 2009, Dr. Varner examined Plaintiff and noted that her abdomen was mildly tender (Tr. 1137-38).  On May 8, Tucker was complaining of vaginal pain; the doctor noted, however, that she was much improved[11] (Tr. 1133-34).  On March 19, 2010, Plaintiff complained of pelvic pain (Tr. 1179).

In his decision, the ALJ reviewed the medical evidence and determined that Plaintiff had the residual functional capacity to perform less than a full range of light work (Tr. 13-22).  The ALJ also determined that although Tucker could not return to her past relevant work, there were specific jobs which, according to the testimony of the vocational expert, she could perform.  In reaching these decisions, the ALJ held that Plaintiff's testimony regarding her limitations and impairments was not credible to the extent alleged.[12]  The ALJ further discredited the pain assessment form completed by Dr. Varner.

---

[9]"*OxyContin* tablets are a controlled-release oral formulation of oxycodone hydrochloride indicated for the management of moderate to severe pain where use of an opioid analgesic is appropriate for more than a few days."  *Physician's Desk Reference* 2344-46 (52nd ed. 1998).

[10]Tylox, a class II narcotic, is used "for the relief of moderate to moderately severe pain".  *Physician's Desk Reference* 2217 (54th ed. 2000).

[11]A prescription was written as well, but the Court cannot read the doctor's writing (Tr. 1133).

7

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians. Tucker specifically takes issue with the ALJ's discrediting of Dr. Varner's pain assessment form (Doc. 12, pp. 3-8). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[13] *see also* 20 C.F.R. § 404.1527 (2012).

In the administrative decision, the ALJ made the following specific findings:

> In terms of the claimant's alleged disabling abdominal pain, the record clearly shows that her complaints are sporadic in nature and related to various underlying reasons, none of which existed for 12 consecutive months. . . .
> As for the opinion evidence, no treating or examining source specifically described the claimant as disabled. In March, 2009, Stephen Varner, M.D., completed

---

[12]The Court notes that Plaintiff has not challenged this finding (*see* Doc. 12).
[13]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

8

>     a form on which he described the claimant as
>     having significant levels of pain secondary
>     to pelvic problems.  That opinion, however,
>     was rendered one month after the Mobile
>     County Health Department noted that the
>     claimant reported zero pain.  Although the
>     degrees of pain Dr. Varner indicated is
>     somewhat consistent with the various
>     episodes of treatment of the claimant for
>     abdominal pain, the totality of the record
>     shows that such degrees of pain have not
>     persisted over any significant periods of
>     time such that any 12-month period of
>     disability is established in this case.

(Tr. 20).

The Court finds substantial support for the ALJ's determination that Dr. Varner's pain assessment form was not supported by the record evidence.  The transcript indicates that the doctor examined Plaintiff only once during the seven-month period preceding the date he completed the form; that exam was one month before the assessment.  The Court also notes that the ALJ correctly noted that Plaintiff was examined one month before the assessment by the Mobile County Health Department during which she indicated that she had no complaints of pain.  Additionally, the Court agrees with the ALJ's conclusion that although Tucker suffered various impairments which caused extreme pain, those ailments were not of one year's duration as required for a finding of disability.  Finally, the Court finds

9

no support for the Plaintiff's assertion of disability in any of the other medical evidence of record; Tucker's failure to direct this Court's attention to any evidence other than that of Dr. Varner confirms this finding.

Plaintiff has also claimed that the ALJ improperly determined that a particular impairment of hers was non-severe. More specifically, Tucker asserts that her polycystic ovary syndrome with chronic pelvic pain is a severe impairment (Doc. 12, pp. 8-10). In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a) (2004).[14] The Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely

---

[14]"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  It is also noted that, under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

The Court has already found substantial support for the ALJ's discrediting of Dr. Varner's pain assessment.  Tucker has directed this Court to no other evidence to support this claim (*see* Doc. 12, pp. 8-10).  The medical evidence, however, fails to demonstrate that this impairment has interfered with Plaintiff's ability to work.  Only Dr. Varner's assessment, unsupported by any other evidence of record, suggests that Tucker's polycystic ovary syndrome would keep her from working.  The Court finds substantial support for the ALJ's conclusion that this impairment was not severe.

Plaintiff has raised two claims in bringing this action.  Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612

11

F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 18th day of December, 2012.

s/BERT W. MILLING, JR.<br>
UNITED STATES MAGISTRATE JUDGE